United States District Court
Southern District of Texas
**ENTERED**
July 15, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBY SAENZ, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 1:18-cv-156 |
| | § | |
| NANCY BERRYHILL, COMMISSIONER, | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| Defendant | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Plaintiff Ruby Saenz's Motion for Summary Judgment (hereinafter, Saenz's "Motion" or "Motion for Summary Judgment"), and Defendant Nancy Berryhill's Response and Motion for Summary Judgment with Brief in Support (hereinafter, collectively referred to as Berryhill's "Motion" or "Motion for Summary Judgment"). Dkt. Nos. 10, 11, and 11-1. For the reasons provided below, it is recommended that the Court **DENY** Saenz's Motion, **GRANT** Berryhill's Motion, and **AFFIRM** Commissioner Berryhill's final decision in Saenz's underlying administrative action.

## I. Jurisdiction

Saenz seeks judicial review of Commissioner Berryhill's final decision which denied Saenz's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter,

the "Act"). *See* Dkt. No. 1 at 1; Dkt. No. 11-1 at 1; Dkt. No. 8-3 at 33. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Background

The parties agree that Saenz protectively filed applications for DIB and SSI on May 1, 2015. Dkt. No. 10 at 4; Dkt. No. 11-1 at 2.[1] Saenz claimed that her disability began on February 1, 2015. TR at 243, 258. She stated that she was disabled due to diabetes, high blood pressure, high cholesterol, asthma, panic attacks, anxiety, severe depression, bipolar disorder, and epilepsy. *Id.* at 284. The Social Security Administration ("SSA") denied her claim initially on August 10, 2015, and upon reconsideration on November 23, 2015. *Id.* at 130-31, 156-57. The SSA notified Saenz of these decisions on August 11, 2015, and December 3, 2015, respectively. *Id.* at 162-163, 170-171.

Pursuant to Saenz's request for a hearing, Administrative Law Judge ("ALJ") Kimberly O. Wyatt conducted a de novo administrative hearing on September 11, 2017. TR at 54-102. Saenz was represented by an attorney at the hearing. *Id.* at 54, 57. Saenz testified at the hearing, along with a vocational expert. *Id.* at 54-55. On October 31, 2017, the ALJ issued her decision denying benefits. *Id.*

---

[1] Counsel for Berryhill has filed a certified electronic copy of the transcript of the underlying record in this case. *See* Dkt. No. 8 through Dkt. No. 8-14. The Court will refer to the transcript with the abbreviation "TR." The transcript indicates that Saenz filed for SSI and DIB on May 1, 2015. TR at 32, 130, 156. It appears that Saenz's application for DIB was finalized on May 4, 2015, and her application for SSI was finalized on June 1, 2015. *Id.* at 243-44, 258-63.

at 47-48. The ALJ found that Saenz had not been disabled between February 1, 2015, and the date of her decision (hereinafter, the "relevant period"). *Id.*

Saenz appealed to the Appeals Council submitting new evidence. TR at 1.[2] The Appeals Council denied Saenz's request for review on August 13, 2018. *Id.* at 1-4. Saenz timely filed her Complaint in this case on October 1, 2018. Dkt. No. 1 at 1; *see also* TR at 1, 3 (notifying Saenz that her civil complaint must be filed within 60 days of receiving the Appeals Council's letter dated August 13, 2018). On January 14, 2019, Berryhill filed her Answer to Saenz's Complaint, along with a certified electronic copy of the transcript of the underlying record in this case. *See* Dkt. No. 7 and Dkt. No. 8 through Dkt. No. 8-14. Saenz filed her instant Motion for Summary Judgment on February 15, 2019. Dkt. No. 10. Berryhill filed her Motion for Summary Judgment on March 15, 2019. Dkt. 11-1.

### III. Standard of Review

Provided a district court allows the parties to present their arguments, and enters judgment based solely on the pleadings and the record, the court may review the Commissioner's final decision and enter summary judgment pursuant to FED. R. CIVIL. P. 56. *See* 42 U.S.C. § 405(g); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981). The court's review of the Commissioner's final decision to deny benefits under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the

---

[2] The evidence Saenz submitted related to a period postdating the ALJ's opinion. *See* TR at 2, 6-23.

evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla but less than a preponderance. *Id.* A no-substantial-evidence finding is appropriate only when no credible evidentiary choices or medical findings exist to support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). If the findings of the Commissioner are supported by substantial evidence in the record, the findings are conclusive and must be affirmed. *Brown v. Apfel*, 192 F.3d 492, 496. Under this standard of review, the court must scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam).

Evidentiary conflicts are for the Commissioner, not the courts, to resolve. *Brown*, 192 F.3d 492, 496. A court may not reweigh the evidence, try the issues de novo, or substitute its own judgment for that of the Commissioner. *Id.* This is true even when the weight of the evidence does not support the Commissioner's decision. *Id.* (citing *Johnson v. Bowen*, 864 F.2d 340, 343). The court's task is deferential judicial review of the Commissioner's disability decision, but not so deferential as to result in meaningless review. *Id.* When determining if substantial evidence supports the Commissioner's determination, the court must weigh: (1) the objective medical facts, (2) the diagnoses and opinions of treating and examining physicians, (3) the

claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Connie G. v. Berryhill*, No. 3:17-CV-03342-M (BT), 2019 WL 1294441, at *2 (N.D. Tex. Mar. 21, 2019) (same).

## IV. Establishing Disability

A claimant is not entitled to benefits under Titles II and XVI unless they qualify as disabled, as that term is defined by the Act.  42 U.S.C. § 423(d)(1)(A); *Heckler v. Campell*, 461 U.S. 458, 459-61 (1983).  The Act defines disability the same way under both Titles, and the implementing regulations governing DIB and SSI are substantially identical. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (same).[3] Under the Act,  disability is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  A sequential five-step process is used to determine whether a claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4).

At steps one through four, claimants bear the burden of proving that: (1) they have not engaged in substantial gainful activity during the relevant period; (2) they

---

[3] Because the implementing regulations governing DIB and SSI are substantially identical, the Court will cite to the regulations interchangeably. *See Barnhart v. Thomas*, 540 U.S. 20, 24 ("For simplicity sake, we will refer only to the II provisions, but our analysis applies equally to Title XVI.").

have one or more severe impairments; (3) their impairment(s) qualify as either a listed impairment in the appendix to the regulations, or equivalent to a listed impairment; and, (4) if they do not have an impairment or combination of impairments qualifying as a listed impairment or its equivalent, the impairment or combination of impairments they do have still gives them a residual functioning capacity that prevents them from performing past relevant work.   20 C.F.R. § 404.1520(a)(4)(i)-(iv); *Leggett v. Chater*, 67 F.3d 558, 564 n.2 (same).[4]   Once the claimants meet their burden at steps one through four, the burden shifts to the Commissioner at step five to establish that the claimants can perform substantial gainful employment available in the national economy.   *Greenspan v. Shalala*, 38 F.3d 232, 236-37.   The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).   A determination at any step that the claimant is or is not disabled ends the inquiry.   *Leggett*, 67 F.3d 558, 564.

## V. Discussion

Saenz's applications for SSI and DIB benefits stated that she became disabled as a result of diabetes, high blood pressure, high cholesterol, asthma, panic attacks,

---

[4] The regulations refer to the assessment of disability as a sequential five-step process. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4). However, the process might be more accurately described as a six-step process because the Commissioner must determine a claimant's residual functioning capacity after step three, but before step four.   *See* 20 C.F.R. § 404.1520(e) ("Before we go from step three to step four, we assess your residual functional capacity."); *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017) (same); *West v. Colvin*, No. W-14-CA-294, 2016 WL 11581019, at *5 (W.D. Tex. May 18, 2016) ("The ALJ determines a plaintiff's RFC after step three and before step four of the sequential evaluation process.") *report and recommendation adopted sub nom. West v. Colvin*, No. CV W-14-CA-294, 2016 WL 11581020 (W.D. Tex. June 8, 2016).

anxiety, severe depression, bipolar disorder, and epilepsy. TR at 243, 258, 284. In her Motion for Summary Judgment, Saenz implies that her applications alleged disability due to other conditions as well, such as degenerative disc disease, chronic obstructive pulmonary disease, migraine headaches, obesity, gastroenteritis, peripheral neuropathy, vertigo, post-traumatic stress disorder ("PTSD"), and personality disorder. Dkt. No. 10 at 5. Saenz does not provide a record citation to support this suggestion. *Id*. As discussed below, however, the ALJ's decision indicates that Saenz presented her with evidence of some of these additional impairments because the ALJ addressed the impairments in her decision. Saenz now alleges that the ALJ erred in assessing her residual functioning capacity ("RFC"). *Id*. at 2, 4, 8. Relatedly, she claims the ALJ's RFC findings are not supported by substantial evidence, and that the ALJ erred at steps two and four by failing to properly consider all of her severe impairments. *Id*. Berryhill disputes these allegations, and states that she is entitled to summary judgment as a matter of law. Dkt. No. 11-1 at 6-13.

**A. The ALJ's Decision**. At step one, the ALJ found that Saenz had not engaged in substantial gainful activity since her alleged disability-onset date of February 1, 2015. TR at 34. At step two, the ALJ found that Plaintiff had the following severe impairments: insulin dependent diabetes mellitus, hypertension, asthma, obesity, postural vertigo, seizure disorder, bipolar disorder, major depressive disorder, PTSD, and panic disorder with agoraphobia. *Id*. at 35. At step three, the ALJ found that Saenz's impairments failed to meet or equal a listed impairment for

presumptive disability under the regulations. *Id.* at 36. The ALJ also found that Saenz's claims concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in Saenz's record. *Id.* at 37-45.

Before moving on to step four, the ALJ found that Saenz had the RFC to perform light work, as that term is defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with some exceptions. TR at 39. Specifically, the ALJ found that Saenz could perform light work, except that:

1. She could only occasionally climb ramps, climb stairs, balance, and crouch;

2. She could never climb ropes, ladders, or scaffolds;

3. She could never perform tasks which required her to walk on wet, uneven, slippery, or vibrating surfaces;

4. She could never perform tasks which required exposure to hazards such as unprotected heights, moving machinery, sharp objects, or open flames;

5. She could never perform tasks that required exposure to smoke, dust, odors, fumes, or pulmonary irritants;

6. She could only understand, remember, and carry out simple instructions and perform simple tasks;

7. She could only maintain attention for 2-hour blocks throughout an 8-hour workday.

8. She could only occasionally communicate and interact with supervisors, coworkers, and the public;

9. She could only complete assigned tasks with ordinary supervision;

10.     She could not be required to exercise judgment beyond the judgment required for making simple, work-related decisions;

11.     She could adhere to a normal schedule, but could only be required to adapt to changes in a routine work environment occasionally.

*Id.* At step four, the ALJ found that Saenz could not perform her past relevant work. *Id.* at 46. At step five, considering Saenz's age, education, work experience, and RFC, the ALJ found that Saenz could perform other light, unskilled work existing in significant numbers in the national economy. *Id.* Specifically, the ALJ found that Saenz could work as a housekeeping cleaner, a small-parts assembler, and a cafeteria attendant. *Id.* at 47.

**B. Saenz's Claims Regarding the ALJ's Step-Two and RFC Findings**.

Saenz begins the argument section of her Motion for Summary Judgment by making the somewhat incongruous assertion that the ALJ erred when she made findings in Saenz's favor. Dkt. No. 10 at 8-9. Saenz states that the ALJ's error lay in finding that Saenz had several severe physical impairments at step two, when two state agency medical consultants (Doctors Laurence Ligon and Kavitha Reddy) found that she had no severe physical impairments. *Id.* Saenz then attempts to segue into an argument concerning the ALJ's RFC findings. She argues that, because the ALJ rejected the non-severity findings of Doctors Ligon and Reddy, the ALJ had no medical basis for finding that Saenz had an RFC that would allow her to perform a limited range of light work. *Id.* at 10. Her argument here appears to be that, if the ALJ decided to reject the non-severity findings of Doctors Ligon and Reddy, then the ALJ should have obtained the opinion of at least one other medical expert to help

guide her RFC assessment. *Id.* at 11. Because the ALJ did not obtain such expert medical assistance, Saenz claims that the ALJ erred in assessing her RFC by "playing doctor[,]" failing to develop the record, and failing to obtain objective medical opinions to support her conclusions. *Id.* at 10-11.[5] Saenz contends that the ALJ's RFC findings are also unsupported by substantial evidence. *Id.* at 8-11.

Leaving aside for a moment the fact that Saenz has no legal basis to complain about findings made in her favor, Saenz's argument about the ALJ's step-two assessment is flawed in other respects. An ALJ may give little or no weight to the opinions of non-examining state agency consultants when their opinions are not supported by the entire record. *Maldonado v. Berryhill*, No. 4:17-CV-242-A, 2018 WL 2980327, at *3 (N.D. Tex. June 14, 2018) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180, at *2-3 (July 2, 1996)). More specifically:

> an ALJ "must consider findings and other opinions of State agency medical" consultants "as opinion evidence" 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Such state agency medical consultants "are highly qualified physicians . . . who are also experts in Social Security disability evaluation." *Id.* "Administrative law judges . . . are not bound by findings made by State agency or other program physicians . . . , but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96–6p, 1996 WL 374180, at *2 (1996); 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). In particular, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

---

[5] Although the ALJ did not adopt the non-severity findings of Dr. Ligon and Dr. Reddy, the ALJ did adopt these doctors' opinions to the extent that they were consistent with the ALJ's found RFC. TR at 45. The ALJ also gave "[g]reat overall weight" to the opinions of the "consultative medical examiner, Winner Baduel, M.D." *Id.* at 44.

*Garza v. Astrue*, No. CIV. M-09-133, 2013 WL 2432421, at *12 (S.D. Tex. June 3, 2013) (errors in original).

Here, the ALJ found that Saenz had the following severe impairments: insulin dependent diabetes mellitus, hypertension, asthma, obesity, postural vertigo, seizure disorder, bipolar disorder, major depressive disorder, PTSD, and panic disorder with agoraphobia.  TR at 35.  In reaching this finding, the ALJ rejected Dr. Ligon and Dr. Reddy's conclusions that Saenz had no severe physical impairments.  The ALJ stated that the conclusions of these doctors were "too extreme."  *Id.* at 45.  The ALJ made this determination after extensively analyzing the medical evidence in Saenz's record and pointing to medical evidence of severity.  *Id.* at 35-45.  Saenz does not explain how the ALJ erred in rejecting the non-severity findings of Doctors Ligon and Reddy. She merely states, in conclusory fashion, that the ALJ's step-two decision was "an error of law."  Dkt. No. 10 at 9.  Saenz's step-two argument regarding the ALJ's favorable findings is frivolous and entitles her to no relief.

Nevertheless, in a footnote, Saenz makes an additional argument related to the ALJ's step-two severity findings that is not frivolous.  Dkt. No. 10 at 9, note 2. Saenz contends that the ALJ failed to recite the correct definition of severity in her opinion, and failed to cite *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  *Id.* Saenz argues that, under *Stone*, when an ALJ fails to recite the severity definition provided in *Stone*, and fails to reference the *Stone* opinion, the reviewing court must assume that the ALJ applied the wrong severity standard.  *Id.*  Saenz then implies that the ALJ applied the incorrect severity standard, and that this resulted in an

overall failure to identify all of Saenz's severe impairments. *Id.* at 12-14.[6]  In particular, Saenz argues that the ALJ erred in failing to find that her "degenerative disc disease of the lumbar spine was a severe impairment." *Id.* at 12.[7]

Berryhill argues in response that the ALJ did not err because she "cited to Social Security Ruling (SSR) 85-28, wherein the Commissioner adopted the severity standard set forth in *Stone*[.]" Dkt. No. 11-1 at 10-11.  Berryhill adds that, even if the ALJ did err, the error was harmless because the ALJ proceeded past step two. *Id.* at 11.

> In *Stone v. Heckler*, the Fifth Circuit required the agency to set forth its iteration of the severity standard either by an express reference to the *Stone* opinion, "or another of the same effect." *See* 752 F.2d at 1106.  In the instant case, in the "Applicable Law" section of her decision, the ALJ cited to Social Security Ruling (SSR) 85-28, wherein the Commissioner adopted the severity standard set forth in *Stone* (Tr. 33).  *See* SSR 85-28, 1985 WL 56856 at *2 (1985).  Thus, by citing to SSR 85-28, the ALJ complied with the ruling of *Stone* and cited to an opinion "of the same effect" as *Stone.*
>
> Regardless, assuming arguendo that the ALJ did not apply the *Stone* standard at step two, Fifth Circuit case law holds that such action may constitute harmless error in cases where the ALJ proceeded past step two.  *Taylor*, 706 F.3d at 603, *see also Cagle v. Colvin*, No. CIV.A. H-12-0296, 2013 WL 2105473, at *8 (S.D. Tex. May 14, 2013) (Because the ALJ progressed beyond step two and considered all limitations

---

[6]  Saenz characterizes her argument as an attack on the ALJ's RFC findings, rather than an attack on the ALJ's findings at step two. Dkt. No. 10 at 2, 4, 8-15.  Still, Saenz makes repeated references to the ALJ's failure to identify all of her severe impairments, which is an error that occurs at step two.  Thus, although Saenz's briefing is muddled, the Court will construe it to include an attack on the ALJ's step-two findings and address that attack along with Saenz's arguments regarding the ALJ's RFC findings.

[7]  The only specific impairment Saenz accuses the ALJ of failing to identify is her degenerative disc disease of the lumbar spine.  Accordingly, the Court need not address other potential step-two omissions or speculate about the content of arguments Saenz has failed to make.

supported by the record, to the extent there was a step two error it was harmless).

*Id.* at 10-11 (formatting altered).

In her decision, the ALJ stated that an "impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have *no more than a minimal effect on an individual's ability to work* (20 CFR 404.1522 and 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p)." TR at 34 (emphasis added). Likewise, in SSR 85-28, the SSA stated:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have *no more than a minimal effect on an individual's ability to work* even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

SSR 85-28, 1985 WL 56856 at *3 (emphasis added).

In *Stone v. Heckler*, the Fifth Circuit defined non-severity differently. 752 F.2d 1099, 1101 (5th Cir. 1985). The court held that an "'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that *it would not be expected to interfere with the individual's ability to work*, irrespective of age, education or work experience.'" *Id.* (citations omitted, emphasis added). In other words, *Stone* does not allow for any interference with the ability to work. If an impairment can be expected to interfere with an individual's ability to work, it must be found severe, even if it would likely have no more than a

minimal effect on the ability to work.  *Id.  See also Loza v. Apfel*, 219 F.3d 378, 392-393 (5th Cir. 2000) ("The ALJ erroneously applied his own standard involving a slight restriction in 'activities of daily living' instead of this court's standard based on a slight abnormality having such minimal effect as would not be expected to interfere with 'ability to work, irrespective of age, education or work experience.") (citations omitted); *Guzman v. Berryhill*, No. EP-17-CV-312-MAT, 2019 WL 1432482, at *5 (W.D. Tex. Mar. 29, 2019) (noting that the standard recited in SSR 85-28 is inconsistent with *Stone* because the language in SSR 85-28 allows for a finding of non-severity when an impairment has a minimal effect on an individual's ability to work, whereas *Stone* does not); *Hitchcock v. Berryhill*, No. 3:17-CV-3164-BH, 2019 WL 1128866, at *8 (N.D. Tex. Mar. 12, 2019) ("Stone provides no allowance for a minimal interference with a claimant's ability to work."); *Ealoms v. Colvin*, No. Ca. No. W-14-CA-431-WSS-JCM, 2016 WL 11584831, at *5 (W.D. Tex. Aug. 8, 2016) (same), *report and recommendation adopted*, No. W-14-CV-431, 2016 WL 11584829 (W.D. Tex. Aug. 31, 2016); *Wichman v. Astrue*, No. SA–11–CV–0170 NN, 2012 WL 787045, at *6 (W.D. Tex. July 13, 2012) ("[T]he specific language the ALJ used in defining the nonseverity standard has, time and again, been found to be an erroneous construction of *Stone*. . . . [T]he ALJ's version permits some interference with work, while *Stone* does not allow for any interference."); *Padalecki v. Astrue*, 688 F. Supp. 2d 576, 580 (W.D. Tex. 2010) ("*Stone* does not allow for any interference with work ability, not even minimal interference."); *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a

claimant's ability to work."); *Sanders v. Astrue*, No. 3:07-CV-1827-G-BH, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008) ("Thus, according to the standard applied by the ALJ, a severe impairment could have, at most, a minimal effect on a claimant's ability to work. This is not the standard set forth in *Stone*, which holds that a severe impairment 'would *not* be expected to interfere with the individual's ability to work.' 752 F.2d at 1101 (emphasis added)").

The standard recited in SSR 85-28 (and the ALJ here) is frequently referred to as the "minimal effect" standard. *See Acosta v. Astrue*, 865 F. Supp. 2d 767, 775 (W.D. Tex. 2012). The standard recited in *Stone* is frequently referred to as the "slight abnormality" standard. *Id.* at 774 (citing *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)). The "minimal effect" and "slight abnormality" terminology tends to obfuscate the difference between the two standards because the phrases "slight abnormality" and "minimal effect" appear in both standards. *See Stone*, 752 F.2d 1099 at 1101, and SSR 85-28, 1985 WL 56856 at *3. Thus, to underscore the difference between the two standards, the undersigned will refer to the *Stone* standard as the "no-interference" standard and the SSR 85-28 standard as the "minimal-interference" standard.

The linguistic difference between the minimal-interference standard and the no-interference standard has given rise to a long-running judicial dispute within this Circuit. *See Guzman v. Berryhill*, No. EP-17-CV-312-MAT, 2019 WL 1432482, at *5 (noting that the difference "has been the source of considerable judicial disagreement.") (collecting cases); *Mills v. Berryhill*, No. 4:16-CV-0331-Y-BL, 2017

WL 3972009, at *4 (N.D. Tex. Aug. 3, 2017) ("There is significant judicial disagreement regarding legal issues related to the asserted *Stone* error."); *Barnes v. Colvin*, No. 3:15CV879-DPJ-JCG, 2017 WL 710966, at *2 (S.D. Miss. Feb. 22, 2017) (referring to the conflicting judicial opinions as a "tiresome dispute" and noting that, despite *Stone's* "clear instructions," ALJ's "continue to ignore the holding" and apply incorrect severity standards). The court in *Guzman v. Berryhill* recently described the judicial dispute as follows:

> One line of cases concludes that the two standards are not consistent because the *Stone* standard requires an impairment to be classified as severe if it has any effect on a claimant's ability to work. *See e.g., Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work."). . . . The other line of cases holds that the two standards are not inconsistent, considering Fifth Circuit jurisprudence as a whole. *See Acosta v. Astrue*, 865 F. Supp. 2d 767, 781–82 (W.D. Tex. 2012) (reviewing Fifth Circuit opinions prior to, and after, *Stone* in which the Fifth Circuit described the standard as a slight abnormality with minimal effect on the ability to work and concluding that the Fifth Circuit "has all along viewed [the *Stone*] standard as providing an allowance for a minimal effect on ability to work without also rendering the impairment severe."); *Mills*, 2017 WL 3972009, at *4–9 (reviewing the history of the judicial disagreement and recommending "join[ing] the growing list of courts to find that the minimal effect standard satisfies *Stone*").

> Recently, however, noting that "[s]evere impairment has a specific–if somewhat surprising–meaning," the Fifth Circuit reiterated the *Stone* standard as its "binding precedent" that "'[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)) (emphasis in original). "Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work.'" *Id.* (quoting *Loza*, 219 F.3d at 391).

No. EP-17-CV-312-MAT, 2019 WL 1432482, at *5 (citations omitted).[8]

Unfortunately, although the *Salmond v. Berryhill* decision referenced in *Guzman* reiterates the *Stone* no-interference standard, it does not resolve the judicial dispute referenced above. The ALJ's decision in *Salmond* stated that an impairment is "not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *See Salmond v. Colvin*, No. 4:15-CV-526-A, 2016 WL 7469620, Dkt. No. 32, at *26-27.[9]  In other words, the ALJ in *Salmond* recited and attempted to apply the *Stone* no-interference standard. The Fifth Circuit ultimately found that the ALJ's non-severity findings were unsupported by substantial evidence because the ALJ improperly disregarded the opinion of every medical professional who had evaluated Salmond. *Salmond v. Berryhill*, 892 F.3d 812, 817 ("All of the medical professionals who evaluated Salmond agreed: Salmond's mental impairments would be expected to interfere with Salmond's ability to work."). In reversing the ALJ, however, the court did not address the above-referenced judicial dispute, or otherwise hold that the no-interference *Stone* standard was inconsistent with the minimal-interference standard.

Like other jurists, the undersigned has found no published Fifth Circuit opinion which acknowledges and resolves the above-referenced judicial dispute. *See*

---

[8] Relying upon *Salmond v. Berryhill*, the court in *Guzman* went on to find that the standard recited in SSR 85-28 was inconsistent with *Stone*. *Id.*

[9] As the ALJ's opinion is not available electronically, the undersigned has obtained a copy and filed it as Report and Recommendation Exhibit A. *See* Dkt. No. 12-1.

*Lewis v. Colvin*, No. 3:15-CV-817-FKB, 2017 WL 1086233, at *6 (S.D. Miss. Mar. 20, 2017) (noting that the Fifth Circuit has "never specifically addressed the issue of whether this [minimal-interference] standard is consistent with *Stone*."). This is unfortunate because the dispute has raged for over a decade. *See Mills v. Berryhill,* No. 4:16-CV-0331-Y-BL, 2017 WL 3972009, at *9 (noting that the split within the circuit likely began in 2008 with the issuance of *Sanders v. Astrue,* No. 3:07-CV-1827-G-BH, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008)).

Summed up most succinctly, the dispute posits the plain language of *Stone* against the conclusion that can be drawn from analyzing *Stone* in conjunction with other Fifth Circuit decisions. That is, the dispute posits *Stone's* plain language against the conclusion that the minimal-interference standard does not conflict with the no-interference standard. *Accord Acosta v. Astrue*, 865 F. Supp. 2d 767, 782 (summarizing both sides of the dispute and concluding that the Fifth Circuit "has all along viewed [the *Stone*] standard as providing an allowance for a minimal effect on ability to work without also rendering the impairment severe.").

In *Acosta v. Astrue*, the court provided a lengthy and persuasive analysis of Fifth Circuit non-severity rulings. 865 F. Supp. 2d 767, 773-783. The court also "recounted the history of the regulations and the backdrop against which *Stone* was decided." *Nichols v. Astrue*, No. 12-CV-00105-WSS-JCM, 2015 WL 13805212, at *6 (W.D. Tex. Jan. 6, 2015), *report and recommendation adopted sub nom. Nichols v. Colvin*, No. W-12-CV-105, 2015 WL 13805210 (W.D. Tex. Jan. 23, 2015). In concluding its analysis, the *Acosta* court opined as follows:

["A] closer reading of its non-severity jurisprudence reveals that our appellate court does not give such a narrow construction to its standard. In *Martin* [*v. Heckler*, 748 F.2d 1027 (5th Cir. 1984)], a progenitor of *Stone*, concluding that under the non-severity standard set forth in *Estran* [*v. Heckler*, 745 F.2d 340 (5th Cir. 1984) (*per curiam*)], the ALJ's Step Two finding that Martin had a non-severe breathing impairment was erroneous, the Fifth Circuit held, "the [Commissioner] was in error in eliminating Martin at step 2, because the impairment was more than a slight abnormality with *minimal effect on his ability to work*, the test for elimination at step 2." *Martin*, 748 F.2d at 1031 (emphasis added). Again, more recently, in *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000), in reversing and remanding the case, in part because the ALJ did not apply the *Stone* standard in finding that Loza's mental impairment was non-severe, the Fifth Circuit instructed the Commissioner to determine on remand whether Loza's mental impairment was "not merely a slight abnormality *of minimal effect on ability to work*." *Loza*, 219 F.3d at 399 (emphasis added).   *Martin* and *Loza* thus provide the necessary guideposts on how to apply the Fifth Circuit's slight abnormality standard to determine severity of an impairment. They inform that under that standard, an impairment is not severe if it is merely, or no more than, a slight abnormality *with minimal effect* on ability to work.

Moreover, in a number of unpublished opinions, our appellate court has approved of administrative findings of a non-severe impairment, where those findings were premised on a determination that the impairment had no more than a minimal effect or limitation on the claimant's ability to work. In other cases, the Fifth Circuit equated its slight abnormality standard with a standard defining non-severe impairment as having no more than a minimal effect on ability to work. The most recent example of such a case is *Brunson v. Astrue*, 387 Fed.Appx. 459 (5th Cir. 2010) (per curiam ) (unpublished). . . . Critically . . . the Brunson panel cited only to *Stone*. The panel [concluded] that "[t]he ALJ applied the proper legal standard of *Stone v. Heckler* " and that substantial evidence supported "the ALJ's conclusion that Mr. Branson's back pain did not impose more than a minimal effect on his ability to engage in basic work-related activities." *Id.* It is therefore crystalline that the *Brunson* court viewed the SSR standard and the *Stone* standard as one in the same.

Taken together, *Martin*, *Loza*, and these unpublished cases reveal that since the time it adopted the slight abnormality standard, our appellate court has all along viewed that standard as providing an allowance for a minimal effect on ability to work without also rendering the impairment severe.

*Acosta*, 865 F. Supp. 2d 767, 781-82 (footnotes and citations omitted, errors and emphasis in original).

The court's decision in *Mills v. Berryhill* is also persuasive and adds further support to the *Acosta* court's conclusion. No. 4:16-CV-0331-Y-BL, 2017 WL 3972009, at *9. The *Mills* court noted that it had found "no decision predating *Sanders* [*v. Astrue*, No. 3:07-CV-1827-G-BH, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008)] in which the [C]ourt [of Appeals] criticized or found the minimal[-interference] standard inconsistent with *Stone*." *Id.* This would not be surprising, the court stated, had the minimal-interference standard originated in or shortly before 2008. *Id.* But, because the minimal-interference standard is "found within SSR 85-28—and in various forms within SSR 96-3p[,]" the court found it "surprising that the first criticism of the minimal[-interference] standard appears to have arisen" in 2008, "twenty-three years after" *Stone* and SSR 85-28 issued. *Id.*

Like the court in *Mills*, the undersigned has found no case predating the 2008 *Sanders* case which finds an inconsistency between the no-interference *Stone* standard and the minimal-interference standard. This might be because the *Sanders* line of cases have overlooked "important language" in *Stone*. *Mills*, No. 4:16-CV-0331-Y-BL, 2017 WL 3972009, at *9. As the *Mills* court explains:

> Although *Sanders* recognized that the difference between the slight abnormality and minimal effect standards "appears slight," it nevertheless proclaimed that "*Stone* provides no allowance for a minimal interference on a claimant's ability to work." *See* 2008 WL 4211146, at *7. The proclamation, however, appears to ignore important language. *Stone* specifically stated that the slight abnormality "would not be expected to interfere" with the individual's ability to work. It did not state definitively that the abnormality "would not interfere" with the

> ability to work as interpreted in *Sanders*. If *Stone* had indeed wanted
> to provide for no interference on a claimant's ability to work, it would
> have had no reason to include the would-not-be-expected language.
> Given the uncertainty expressed within the *Stone* standard, it appears
> that *Stone* does provide some limited allowance for minimal interference
> even though such interference would not be expected.

*Mills v. Berryhill*, No. 4:16-CV-0331-Y-BL, 2017 WL 3972009, at \*9. Viewed by itself,

the distinction made here by the *Mills* court gives a convincing impression of hair-

splitting. When viewed in conjunction with the court's analysis in *Acosta*, however,

the distinction becomes more compelling.

Finding that the minimal-interference standard satisfies *Stone* is also

consistent the purpose of the Act. If a claimant's impairment or combination of

impairments do no more than minimally interfere with the claimant's ability to work,

the claimant will be able to perform some full-time work and should not receive DIB

or SSI benefits. Accordingly, for the reasons provided in *Acosta* and *Mills*, it is

recommended that the Court "join the growing list of courts" to find that the minimal-

interference standard "satisfies *Stone*[.]" *Mills*, 2017 WL 3972009, at \*9.

Identifying the correct non-severity standard is critical in this case because

Berryhill relies upon the minimal-interference standard when asking the Court to

hold that the ALJ did not err at step two. However, the Court cannot hold that

Saenz's back impairment only minimally interfered with her ability to work because

the evidence in the record does not allow the Court to make *any* findings on the effect

of Saenz's back impairments on her ability to work. *See Ripley v. Chater*, 67 F.3d

552, 557 (5th Cir. 1995) (finding remand appropriate because the record did not

"clearly establish" the "effect Ripley's condition had on his ability to work."). This is

because: (1) there are no medical-source statements in the record regarding the limitations, if any, caused by Saenz's back impairments; and (2) there is no other objective evidence in the record on the subject. *See id.* at 557 n. 27 ("Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects of Ripley's conditions, no matter how 'small', on his ability to perform sedentary work.").

In *Ripley v. Chater*, the Fifth Circuit noted that the absence of a medical-source statement on the effect of an impairment will not mandate reversal in every case. *Ripley*, 67 F.3d 552 at 557. Because it is the ALJ's role to determine a claimant's RFC, an ALJ's determination regarding the effect of an impairment on a claimant's ability to work may be affirmed if the ALJ's determination is supported by substantial evidence. *Id.* ("In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."). Further, reversal will only be appropriate if the claimant can show prejudice as a result of the ALJ's failure to obtain a medical-source statement. *Id.* ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.") (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

In Ripley's case, the record included "a vast amount of medical evidence" establishing that Ripley had back impairments. 67 F.3d 552 at 557. This evidence

included a four-year history of surgery, complaints of pain, and medical exams. *Id.*
In light of this evidence, and new evidence substantiating Ripley's claims of back
pain, the court held that substantial evidence did not support the ALJ's decision. *Id.*
at 556-557.[10]  In reaching this finding, the court noted that the only evidence in the
record concerning Ripley's ability to work "came from Ripley's own testimony."
Therefore, the court stated that, upon remand, the ALJ must "obtain a report from a
treating physician regarding the effects of Ripley's back condition upon his ability to
work." *Id.* at 557-58.

Saenz argues that no state agency medical examiner or doctor ever reviewed
the evidence pertaining to her back impairments, although the evidence was before
the ALJ prior to the evidentiary hearing. Dkt. No. 10 at 7, 11, 13.  A review of the
record reveals that the evidence Saenz relies upon was not in existence when the SSA
denied her claim initially on August 10, 2015, and upon reconsideration on November
23, 2015. *See* Dkt. No. 10 at 7, 13 (referencing evidence contained at TR 59, 84, 746,
764, 767, 801, 859).  This evidence is limited to:  (1) an x-ray report; (2) Saenz's
hearing testimony; and, (3) medical records documenting Saenz's complaints of pain,
all of which post-date November 23, 2015. TR 59, 84, 746, 764, 767, 801, 859.

The x-ray report Saenz relies upon documents the results of her
August 29, 2016 lumbar-spine x-ray.  TR at 859.  The report lists an "impression" of
"degenerative changes; mild scoliosis." *Id.*  In the "findings" section, the report states:

---

[10] This new evidence included evidence from a second back surgery performed after the ALJ
issued his decision.  The surgery revealed the presence of scar tissue from an initial surgery
which would have been in existence during the claimed period of disability. *Ripley*, 67 F. 3d.
552, 556.

> There is no acute fracture or subluxation. Disc spaces are preserved.
> No lytic or blastic lesion is demonstrated. There are multilevel marginal
> osteophytes, more prominent at L4 and L5. There is hypertrophy of
> facets. There is mild scoliosis to the right. Degenerative changes are
> also present in lower thoracic spine.

*Id.*[11]

Scoliosis is a "lateral curvature of the spine." *See* https://www.merriam-webster.com/dictionary/scoliosis (last visited on July 15, 2019). An osteophyte is a "bone spur" or "an abnormal bony outgrowth or projection (such as one occurring near a joint affected by osteoarthritis)." *See* https://www.merriam-webster.com/dictionary/osteophytes (last visited on July 15, 2019). Hypertrophy is defined as an increase in bulk or a thickening. *See* https://www.merriam-webster.com/dictionary /hypertrophy (last visited on July 15, 2019).

> Facet Hypertrophy is the term used to describe a degeneration and
> enlargement of the facet joints. The facet joints, which are a pair of
> small joints at each level along the back of the spine, are designed to
> provide support, stability, and flexibility to the spine. The facet joint
> may become enlarged as part of the body's response to degeneration of
> the spine, i.e. to try to provide additional stability to counteract the
> instability from degenerative disc disease. The joint can enlarge to the
> point where it puts pressure on the adjacent nerves in the spine, which
> in turn can cause pain to radiate along the path of the nerve (e.g.
> sciatica).

*See* https://www.spine-health.com/glossary/hypertrophic-facet-disease (last visited on July 15, 2019) (formatting altered).

---

[11] This x-ray report supports Saenz's claim that she had back impairments during the relevant period of disability. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (noting that a 'physical or mental impairment' is defined as 'an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.'") (citations omitted). The report does not speak to what limitations, if any, Saenz's back impairments caused.

The evidentiary hearing testimony Saenz relies upon includes statements from her attorney, who mentioned Saenz's back impairments and referenced Saenz's medical records from Su Clinica. TR at 59. Specifically, Saenz's attorney argued that these records confirmed a diagnosis of lumbar back pain. *Id.* Saenz also testified at the hearing, stating that:

1. It sometimes takes her an hour to get out of bed because her back locks up;

2. She has experienced lower back pain ever since she picked up an old console TV and moved it across the room, when her daughter was three years old;[12]

3. She takes muscle relaxers for her back pain, but has not had injections or surgery;

4. On a scale from zero to ten, she rates her back pain at the highest level of ten;

5. Her back pain increases the amount of time it takes for her to put on her pants, shoes, and socks;

6. Her back pain prevents her from exercising.

*Id.* at 84-85, 89.

The Su Clinica records Saenz references additionally confirm that she complained to her doctors about her back pain. Specifically, the records note that:

1. On January 19, 2016, Saenz complained of a lump in her lower left back area;

2. On August 26, 2016, Saenz reported that she had "chronic low back pain," she treated the pain with Tylenol, and Aleve was not working anymore;

3. On October 6, 2016, Saenz complained of low back pain; the pain was a 6, on a zero-to-ten pain scale; the pain was constant and

---

[12] At the time of the hearing, Saenz's daughter was an adult. TR at 41.

> sharp; the pain had been present for 8 days; the pain worsened with movement, and when lifting her 30-pound grandchild.

*Id.* at 746, 764, 767, 801.

The parties have pointed to no medical-source statements addressing the evidence Saenz relies upon here. As noted above, this evidence all postdates the November 23, 2015 denial of Saenz's DBI and SSI applications upon reconsideration. Doctors Ligon and Reddy had already completed their evaluations by this time. TR at 123, 130-31, 137, 149, 155-57. Similarly, Dr. Winnifer Lourdes M. Baduel had already completed her disability determination report. *Id.* at 485-88 (showing a report-completion date of July 22, 2015). In giving her diagnostic impressions, Dr. Baduel did not reference any back impairments. *Id.* at 488. Additionally, Dr. Baduel did not list any functional limitations attributable to Saenz's back impairments. *Id.* ("Summary of Function Capacity: Mildly impaired vision. Normal hearing. Impaired balance. Impaired carrying capacity.") (formatting altered). Thus, the record is devoid of medical-opinion evidence concerning the effect of Saenz's back impairments on her ability to work, and the only other evidence on the subject comes from Saenz herself.

Just as in *Ripley*, then, the record does not allow the Court to make any findings on the effect of Saenz's back impairments on her ability to work. *See Ripley*, 67 F.3d 552, 557. As a result, this Court must reject Berryhill's invitation to hold that the ALJ did not err. Relatedly, this Court may not conduct a substantial-evidence review of the ALJ's step-two determination regarding Saenz's back impairments because there is no evidence that the ALJ made such a determination.

The ALJ's decision contains no mention of Saenz's back impairments, nor does it refer to any limitations or symptoms caused by those impairments.

For this reason, Berryhill's argument regarding harmless error is also misplaced. Berryhill asserts that a court may consider an ALJ's step-two errors to be harmless when the ALJ proceeds beyond step two in the sequential evaluation process. Dkt. No. 11-1 at 11. This is a slight misstatement of the rule. When an ALJ errs at step two, the Commissioner may show that reversal is not required by showing that the error did not affect the claimant's substantial rights. *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012) (citing *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988)). The Commissioner may do this, either by showing that the ALJ applied the correct legal standard at a later stage in the sequential evaluation, or by showing that the error was harmless. *Id; Charles v. Colvin,* 628 Fed.Appx. 290, 292 (5th Cir. 2016) (unpublished); *Connie G. v. Berryhill,* No. 3:17-CV-03342-M (BT), 2019 WL 1294441, at *4 (same); *Barnes v. Colvin,* No. 3:15CV879-DPJ-JCG, 2017 WL 710966, at *2 (same).

An error is not harmless unless it is "inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart,* 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003)); *Connie G. v. Berryhill,* 2019 WL 1294441, at *4 (same). Berryhill's briefing does not address the inconceivability of a different administrative conclusion, absent the ALJ's error. Because the ALJ never addressed Saenz's back

impairments, Berryhill's briefing also fails to show that the ALJ corrected her step-two error at a later stage in the process.

Nevertheless, Berryhill's failure to show an entitlement to summary judgment on this point does not mean that Saenz has succeeded where Berryhill has failed. Though Berryhill has failed to show no error, or harmless error, Saenz has not shown reversible error. That is, Saenz has not shown that the ALJ erred in failing to find that her back impairments were severe because, as noted above, the record evidence does not allow the Court to make any findings on the effect of Saenz's back impairments on her ability to work. Thus, because Saenz has not shown that her back impairments more than minimally interfered with her ability to work, this Court cannot find that the ALJ erred under *Stone*.

Still, Saenz has shown that the ALJ erred in failing to consider Saenz's back impairments at any stage in the sequential evaluation process. With respect to this error, Saenz argues that, because she presented evidence of her back impairments to the ALJ, the ALJ had a duty to develop the record and obtain a medical-source statement regarding the effect of her impairments on her ability to work. Dkt. No. 10 at 10-11. Because the ALJ failed to do so, Saenz argues that she is entitled to a reversal of the ALJ's decision. *Id.*

An ALJ must fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam) and *Kane v. Heckler*, 731 F.2d 1216, 1219). The decision to order a consultative exam, however, is discretionary. *Jones v. Bowen*, 829 F.2d 524, 526

(5th Cir. 1987). Full development "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original); *Jones v. Bowen*, 829 F.2d 524, 526 (same). Procedural perfection is also not required. *Connie G.*, 2019 WL 1294441, at *2 (citing *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012)). To prevail on a claim that the ALJ failed to adequately develop the record, a claimant must show that she was prejudiced by the ALJ's failure. *Id.*

> "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22 (citing *Kane*, 731 F.2d at 1220). Put another way, Plaintiff "must show that [she] could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996) (per curiam) (citing *Kane*, 731 F.2d at 1220).

*Id.*

Saenz has not shown that she could and would have adduced evidence that might have altered the result. The evidence she relies upon is limited to the evidence discussed above. This evidence does not objectively address whether her back impairments limited or interfered with her ability to perform a limited range of light work during the relevant period of disability. Further, the evidence Saenz submitted to the Appeals Council after the issuance of the ALJ's decision shows that Saenz repeatedly denied experiencing back pain. TR at 12-13, 15-18. The medical records Saenz submitted prior to the issuance of the ALJ's decision also contain references to Saenz's lack of back pain. *See, e.g., id.* at 136 ("No tenderness in spine. . . . Gait was

WNL. Able to partially squat"); 422 ("There is no midline cervical spine or thoracic spine tenderness present."); 487 ("Back: No tenderness along the thoracic spine.  No costovertebral angle tenderness. There was no redness nor warmth."); 559 ("No back pain, no muscle pain."); 560 ("Back: Nontender, normal range of motion, normal alignment, no step-offs."); 586 (Musculoskeletal: Negative for muscle cramping, pain, twitching, weakness, or joint pain."); 592 ("No back pain.").

Rather than producing or identifying evidence showing prejudice, Saenz appears to suggest that the evidence might be found if her case is reversed and remanded.  Dkt. No. 10 at 15 ("[H]ad the ALJ properly obtained medical guidance to support the found RFC and properly considered the Plaintiff's degenerative disc disease of the lumbar spine, the Plaintiff *may* not have been able to perform her past relevant work or any other work that existed in significant numbers.") (emphasis added).  Suggesting that evidence might be obtained which may show an inability to perform a limited range of light work is insufficient to establish prejudice. *Brock v. Chater*, 84 F.3d 726, 728-29 (noting that a claimant "must show that [she] could and would have adduced evidence that might have altered the result.").  Accordingly, although the ALJ's complete failure to address Saenz's back impairments in her decision constitutes error, Saenz has not shown that she was prejudiced by this error.  Having failed to show prejudice, she is not entitled to relief. *See Brock*, 84 F.3d 726, 728-29.

Saenz's remaining arguments do not alter this conclusion.  These arguments consist of repeated assertions that the ALJ's RFC findings are unsupported by correct

legal standards and substantial evidence.  Dkt. No. 10 at 8-14.  Except to the extent already addressed above, Saenz's allegations are conclusory and fail to entitle her to relief.  As Berryhill correctly points out, Saenz has failed to identify any functional limitations on her ability to work not already accounted for by the ALJ.  *See* Dkt. No. 11-1 at 12.  Further, the ALJ did not "play doctor," as Saenz claims.  *See* Dkt. No. 10 at 10.  The ALJ adopted the opinions of Dr. Ligon and Dr. Reddy, to the extent that their opinions were consistent with the ALJ's found RFC.  TR at 45.  The ALJ also gave "[g]reat overall weight" to the opinions of the "consultative medical examiner, Winner Baduel, M.D." *Id.* at 44.  Substantial evidence supports the ALJ's findings. It is recommended that the Commissioner's decision be affirmed.

## VI.  Recommendation

It is recommended that the Court **DENY** Saenz's Motion (Dkt. No. 10); **GRANT** Berryhill's Motion (Dkt. No. 11); and, **AFFIRM** Commissioner Berryhill's final decision in Saenz's underlying administrative action.

## VII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been

served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

SIGNED on this 15th day of July, 2019.

Ignacio Torteya, III
**United States Magistrate Judge**